## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT BECKLEY

UNITED STATES OF AMERICA

v.                                                          CRIMINAL ACTION NO.  5:22-cr-00105

LITEEF HUGHES

### MEMORANDUM OPINION AND ORDER

Pending are two objections to the Presentence Investigation Report ("PSR"). The Government objects to the United States Probation Office's ("Probation") failure to recommend Defendant Liteef Hughes be classified as a career offender under U.S.S.G. § 4B1.1. Mr. Hughes objects to the two-level enhancement recommended by Probation for possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1).

### I.

On September 1, 2022, Mr. Hughes pled guilty to Count One of the Indictment charging him with distributing a quantity of cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a). [ECF 16]. Mr. Hughes has two prior felony convictions for possession with intent to distribute cocaine in 2004 and 2009. [PSR ¶¶ 41, 43]. These prior convictions for possession with intent to distribute cocaine were in violation of Maryland Criminal Code § 5-602. [ECF 60]. Additionally, during the search of Mr. Hughes' residence that led to his arrest for the underlying offense, two firearms were found on or near another person. That person was located near the entrance to Mr. Hughes' bedroom, where Mr. Hughes was located with the cocaine and drug proceeds. [PSR ¶ 30].

When determining which enhancements were applicable to Mr. Hughes, Probation concluded the career offender sentencing enhancement was inapplicable based on *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022). [PSR at 8, n.1]. Probation, however, did recommend a two-level enhancement to Mr. Hughes' base offense level for possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1). [PSR ¶ 30]. As noted, law enforcement located two firearms on or near another person who was present and near Mr. Hughes, the cocaine, and drug proceeds. [PSR Ad. at ¶ 22].

Prior to sentencing, the Government and Mr. Hughes submitted sentencing memoranda. The Government asserted Mr. Hughes should be classified as a career offender based upon his current conviction and two prior, alleged predicate Maryland convictions for possession with intent to deliver controlled substances. Additionally, the Government contends Probation correctly recommended the two-level enhancement for possession of a firearm. Mr. Hughes denies he is a career offender, asserting the instant offense is not a controlled substance offense and the prior state convictions for possession with intent to distribute do not qualify as predicates. Mr. Hughes also contends the two-level enhancement for possession of a firearm should not apply as Mr. Hughes never possessed the firearms and Application Note 11(A) is at odds with U.S.S.G. §2D1.1(b)(1).

On December 6, 2022, the Court continued Mr. Hughes' sentencing pending resolution of whether, in light of *Campbell*, an offense under 21 U.S.C. § 841(a)(1) qualifies as a controlled substance offense under U.S.S.G. § 4B1.2. Following our Court of Appeal's decision in *United States v. Groves*, 65 F.4th 166 (4th Cir. 2023), the Court directed the parties to file supplemental briefing regarding whether Mr. Hughes qualifies as a career offender.

In its supplemental briefing the Government maintains that Mr. Hughes should be

considered a career offender. The supplemental briefing covers little new ground, except for polishing Mr. Hughes' contention respecting the 2004 and 2009 predicate cocaine convictions. He notes the statute of conviction for the prior offenses defined cocaine more broadly than the current Maryland statutory offense. Specifically, in 2004 and 2009, Maryland criminalized ioflupane as a derivative of ecgonine; it no longer does so. The contention is thus that our Court of Appeal's reasoning in *United States v. Hope*, 28 F.4th 487, 504 (4th Cir. 2022), read in conjunction with *United States v. Ward*, 972 F.3d 364, 371 (4th Cir. 2020), bar predicate treatment of the 2004 and 2009 convictions.

Upon inquiry from the Court, Mr. Hughes asserts his 2004 and 2009 convictions were for possession with intent to distribute cocaine in violation of *Maryland Code, Criminal Law* § 5-602. The Government agrees and has furnished the charging documents for the two convictions.

## II.

### A.    Career Offender

There are three necessary requirements for classification as a career offender under the Guidelines:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. The Guidelines define the phrase "controlled substance offense" in the following manner:

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

3

> (1) prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

*Id.* § 4B1.2(b)(1). The term "controlled substance offense" includes "the offenses of aiding and abetting, attempting to commit or conspiring to commit any such offense." *Id.* § 4B1.2(d).

The "categorical approach" is used to determine whether an offense qualifies as a "controlled substance offense." *United States v. Davis*, No. 20-4433, 2023 WL 4876392, at *10 (4th Cir. 2023) (citing *United States v. Ward*, 972 F.3d 364, 368 (4th Cir. 2020)).  The analysis "focus[es] on the elements of the prior offense rather than [on] the conduct underlying the conviction." *Id.* (alterations in original) (quoting *United States v. Dozier*, 848 F.3d 180, 183 (4th Cir. 2017) (internal quotation marks omitted)). If the elements of the prior offense criminalize conduct broader than the Guidelines definition of a controlled substance offense, that prior offense does not qualify as a controlled substance offense. *Id.* (citing *United States v. Campbell*, 22 F.4th 438, 441 (4th Cir. 2022)).

"This approach is altered for 'divisible' statutes," namely those "statutes that 'list elements in the alternative[ ] and thereby define multiple crimes.'" *Dozier*, 848 F.3d at 183 (quoting *Mathis v. United States*, 579 U.S. 500, 505 (2016)). "In such circumstances, the sentencing court may apply the modified categorical approach and consult 'a limited class of documents'--otherwise known as *Shepard* documents--'to determine what crime, with what elements, a defendant was convicted of.'" *Id.* (quoting *Mathis*, 579 U.S. at 505).

Section 5-602 provides pertinently that "a person may not: (1) distribute or dispense a controlled dangerous substance; or (2) possess a controlled dangerous substance other than cannabis in sufficient quantity reasonably to indicate under all circumstances an intent to distribute

4

or dispense a controlled dangerous substance." Md. Code, Crim. Law § 5-602(a). The text thus appears to "list elements in the alternative[ ]," *Dozier*, 848 F.3d at 183 (quoting *Mathis*, 579 U.S. at 505), distinguishing the crime of distribution from possession with intent to distribute. But the inquiry does not there end.

The Court should also examine Maryland "state court decisions to discern whether those courts treat the listed alternatives as elements or means." *United States v. Furlow,* 928 F.3d 311, 319-20 (4th Cir. 2019). Those decisions confirm the textual analysis: distribution and possession with intent to distribute are separate offenses. *See Hankins v. State*, 565 A.2d 686, 691, 80 Md. App. 647, 657 (Ct. Spec. App. 1989) (referring to distribution and possession with intent to distribute as "two crimes" and noting that distribution "requires the further step, of course, of actually transferring the substance to another"); *see also Shortz v. State*, No. 0346, 2017 WL 26130, at *17 (Md. Ct. Spec. App. Jan. 3, 2017) (citing *Hankins* favorably). In addition to divisibility by offense conduct, § 5-602(a) is also divisible by drug type. Maryland defines a controlled dangerous substance as "a drug or substance listed in Schedule I through Schedule V" Md. Code, Crim. Law § 5-101(g)(1)(i). The "penalty for a violation of § 5–602 depends on the substance distributed or possessed with intent to distribute." *United States v. Hill*, 471 F. App'x 143, 161–62. (4th Cir. 2012) (applying the modified categorical approach, in part, "[b]ecause the maximum penalty for a violation of Maryland's drug distribution statute depends on the drug distributed").

Given the divisibility analysis, the modified categorical approach applies. Consequently, *Shepard* documents may be consulted in determining the crimes of conviction and their elements. For both the 2004 and 2009 convictions, the indictments provide Mr. Hughes unlawfully possessed "a controlled dangerous substance of Schedule #II, to wit: *Cocaine*, which

is a Narcotic Drug, in sufficient quantity reasonably to indicate under all circumstance an intent to distribute the same in violation of Criminal Law Article, Section 5-602 of the Annotated Code of Maryland." [ECF 62-1 at 1–2, 6–7] (emphasis added). The *Shepard* documents establish that Mr. Hughes' 2004 and 2009 offenses were for possession with intent to distribute cocaine in violation of § 5-602(a).[1]

The Court next determines whether the offenses are covered by the Guidelines' definition of a "Controlled Substance Offense." The Guidelines provide that "[t]he term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits . . . the possession of a controlled substance . . . with intent to . . . distribute . . . ." U.S.S.G. § 4B1.2(b). Following receipt of the parties' sentencing memoranda, the definition of "controlled substance offense" has been amended to include inchoate offenses. "The term[ ] 'controlled substance offense' include[s] the offenses of aiding and abetting, attempting to commit, or conspiring to commit any such offense." U.S.S.G. § 4B1.2(d). The § 5-602 crime thus clearly falls within the U.S.S.G.'s definition of a controlled substance offense.  U.S.S.G. § 4B1.2(d).

As noted, however, Mr. Hughes additionally contends his 2004 and 2009 convictions no longer qualify as controlled substance offenses inasmuch as Maryland has since removed certain types of cocaine from its controlled substance schedule. He asserts this necessarily results in the Maryland definition of cocaine in 2004 and 2009 being broader than the current Maryland offense of possession with intent to distribute. At the time of Mr. Hughes's convictions

---

[1] Mr. Hughes has not provided any evidence to suggest his prior cocaine convictions were for possession with intent to distribute ioflupane. Rather, Mr. Hughes contends that at the time of the prior convictions, cocaine was defined to include ioflupane so there is a possibility that the cocaine Mr. Hughes possessed in 2004 and 2009 was ioflupane.

in 2004 and 2009, Maryland classified "ecgonine, its derivatives, their salts, isomers, and salts of isomers" as a Schedule II controlled dangerous substance. Md. Code, Crim. Law § 5-403(b)(3)(v) (2003 and 2009). Today, however, rather than identifying specific substances, with limited exceptions, Maryland generally incorporates substances "designated as a Schedule II controlled dangerous substance by the federal government" Md. Code, Crim. Law § 5-403(a)(2) (2023). But the United States Attorney General, pursuant to his authority to remove certain substances from the drug schedules under 21 U.S.C. § 811(a)(2), has removed ioflupane from Schedule II. 21 C.F.R. § 1308.12(b)(4)(iii). Accordingly, while at the time of Mr. Hughes's two convictions Maryland classified ioflupane as a controlled dangerous substance, it no longer does so. He thus asserts there is lacking a categorical match between the 2004 and 2009 definition and the present definition of cocaine under Maryland law.

Mr. Hughes asserts that when the Court is determining whether Mr. Hughes' 2004 and 2009 convictions are broader than the Guidelines definition of a controlled substance offense, the Court should compare the elements of the prior state convictions with the current elements of those same Maryland offenses. As noted, he relies upon *Hope.* In *Hope* our Court of Appeals applied a "backward looking method" to determine whether a previous state offense qualifies as a predicate "serious drug offense" under the ACCA.[2] 28 F.4th at 507. The Court compared the

---

[2] The question of whether a "serious drug offense" as defined under the ACCA federal drug schedule in effect at the time of sentence or at the time of the prior state drug offense is currently before the Supreme Court. The case on review, from the United States Court of Appeals for the Third Circuit, declined to follow our Court of Appeals' approach in *Hope. United States v. Brown,* 47 F.4th 147, 153 (3d Cir. 2022), *cert. granted,* 143 S. Ct. 2458, 216 L. Ed. 2d 430 (2023). The United States Court of Appeals for the Eleventh Circuit has followed suit, concluding the "federal controlled-substances schedules in effect at the time of the previous state conviction govern." *United States v. Jackson,* 55 F.4th 846, 856 (11th Cir. 2022), *cert. granted,* 143 S. Ct. 2457, 216 L. Ed. 2d 430 (2023) (finding prior state cocaine convictions satisfy the ACCA definition for a "serious drug offense"). This developing consensus is fortified by the recent decision of the United States Court of Appeals for the Sixth Circuit. In *United States v. Clark,* 46

previous state offense statute in effect at the time of the prior convictions with federal law at the time of federal sentencing. *Id.* at 507–08. And "after considering whether South Carolina's 2013 definition for 'marijuana' matches the February 2020 federal definition for 'marijuana,' [the Court], including the dissent, h[eld] that there is no categorical match." *Id.* at 505.

Most Fourth Circuit decisions noting the analogous nature of the ACCA and the career offender enhancement are in the context of dealing with the definition of what constitutes a "violent felony" for ACCA purposes and a "crime of violence" for career offender purposes. *See United States v. Vann*, 660 F.3d 771, 773 n.2 (4th Cir. 2011) ("The ACCA's definition of a 'violent felony' is nearly identical to and materially indistinguishable from the definition of a 'crime of violence' under the career offender enhancement of the Sentencing Guidelines . . . We routinely rely on decisions interpreting either of those enhancement provisions in ascertaining whether a prior conviction is a crime of violence under the Guidelines or a violent felony under the ACCA.").

Nonetheless, our Court of Appeals has likewise recognized that the definition of a "serious drug offense" under the ACCA and the definition of "controlled substance offense" for career offender purposes are equally similar. *See United States v. Furlow*, 928 F.3d 311, 314 (4th Cir. 2019) (recognizing that "[t]he ACCA definition of a predicate 'serious drug offense' and the

---

F.4th 404, 407-08 (6th Cir. 2022), *cert. denied*, No. 22-6881, 2023 WL 6378001 (U.S. Oct. 2, 2023), the Sixth Circuit -- in a delisting setting remarkably similar to that presented here -- "assess[ed] the nature of the predicate offenses at the time the convictions for those offenses occurred." Id. at 409. The panel relied on (1) the Guidelines' text, (2) *Mallett v. United States*, 334 F.3d 491 (6th Cir. 2003), and (3) *McNeill v. United States*, 563 U.S. 816, 825 (2011). By example, the decision in *McNeill* held when "determining the maximum term of imprisonment for a prior offense, courts must look to the punishment authorized under the statute at the time of the state conviction rather than at the time of current federal sentencing." *McNeill*, 563 U.S. at 825.

Guidelines definition of a predicate 'controlled substance offense' are . . . similar."), *rev'd on other grounds*, 140 S.Ct. 2824 (2020).

Our Court of Appeals has explained it is routinely "guided by the 'nearly identical' and 'materially indistinguishable' language" contained in both the ACCA and the career offender provision of the Guidelines and has recognized "that precedents evaluating the ACCA apply with equal force to [Guidelines section] 4B1.2.") *United States v. Jenkins*, 631 F.3d 680, 683. Relying on our Court of Appeals logic in *Hope*, the Court compares Maryland's definition of "cocaine" at the time of Mr. Hughes' federal sentencing with Maryland's definition of "cocaine" at the time he was sentenced for his two prior Maryland convictions in 2004 and 2009.

Currently, Maryland incorporates Schedule II controlled dangerous substances as "designated as a Schedule II controlled dangerous substance by the federal government." Md. Code, Crim. Law § 5-403(a)(2) (2023). Ioflupane has been removed from Schedule II of the federal drug schedules. 21 C.F.R. § 1308.12(b)(4)(iii). In 2004 and 2009 Maryland classified "ecgonine, its derivatives, their salts, isomers, and salts of isomers" as a Schedule II controlled dangerous substance. Md. Code, Crim. Law § 5-403(b)(3)(v) (2003 and 2009). Ioflupane is a derivative of ecgonine. Thus, a categorical match is absent from the two definitions.

The Court accordingly **OVERRULES** the Government's objection to the PSR and **FINDS** Mr. Hughes is not a career offender under U.S.S.G. § 4B1.1.

## B.    Firearm Enhancement

Under U.S.S.G. § 2D1.1(b)(1), a defendant's offense level is increased by two if a dangerous weapon was possessed. The firearm enhancement is applicable "if the weapon was

present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n. 11(A). Our Court of Appeals has held that "[t]he enhancement is proper when the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction." *United States v. Mondragon*, 860 F.3d 227, 231 (4th Cir. 2017) (cleaned up).  This enhancement "reflects the increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1 cmt. n. 11(A).

"The government bears the initial burden of proving, by a preponderance of the evidence, that the weapon was possessed in connection with the relevant illegal drug activity." *United States v. Mondragon*, 860 F.3d 227, 231 (4th Cir. 2017); *see United States v. Manigan*, 592 F.3d 621, 628 (4th Cir. 2010). "[T]he government need prove only that the weapon was present, which it may do by establishing a temporal and spatial relation linking the weapon, the drug trafficking activity, and the defendant." *Id.* (citing *United States v. Bolton*, 858 F.3d 905, 912 (4th Cir. 2017) (internal quotations omitted). "Proof of constructive possession of the dangerous weapon is sufficient, and the Government is entitled to rely on circumstantial evidence to carry its burden." *Manigan*, 592 F.3d at 629. "[A] sentencing court faced with whether to apply the weapon enhancement is entitled to take reasonable account of the settled connection between firearms and drug activities." *Id.* When determining whether a defendant possessed a firearm in connection with relevant drug activity, a sentencing court may consider several pertinent factors including the type of firearm involved and the location or proximity of the seized firearm. *Id.* "[F]irearms that are readily accessible during drug activities can be deemed as possessed in connection there-with." *Id.*

"If the government carries its burden, the sentencing court presumes that the weapon was possessed in connection with the relevant drug activity and applies the enhancement, unless the defendant rebuts the presumption by showing that such a connection was "clearly

improbable." *Id.*; U.S.S.G. § 2D1.1(b)(1) cmt. n.11(A); *see United States v. Slade*, 631 F.3d 185, 189 (4th Cir. 2011). In doing so, "the defendant may rely on 'circumstantial evidence, such as the type of weapon involved and its location or accessibility.'" *Mondragon*, 860 F.3d at 231 (quoting *United States v. Bolton*, 858 F.3d 905, 912 (4th Cir. 2017)).

Following an investigation into Mr. Hughes, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) met with a confidential informant for the purpose of conducting a controlled buy from Mr. Hughes at his residence. [PSR ¶ 9]. When the confidential informant entered the residence, Mr. Hughes, Christopher Johnson, and an unidentified male were present. [*Id.* ¶ 10]. The drug transaction occurred in the kitchen, where there were also digital scales and narcotic packaging materials. [*Id.*]. Following the controlled buy, a search warrant was executed at the residence. Mr. Hughes, Christopher Johnson, and Eric Coleman were present when law enforcement entered the home. [*Id.* ¶ 9–10]. Notably, Christopher Johnson was in the living room. He was observed to have a firearm in his waistband. [*Id.* ¶ 13]. Law enforcement also located a second firearm next to Mr. Johnson. [*Id.* ¶ 15]. Both firearms were 9mm caliber pistols located near the doorway of Mr. Hughes' bedroom, where he was located and found to possess cocaine and drug proceeds [*Id.* ¶¶ 15, 30]. The record does not indicate who owned the firearms. Both Mr. Hughes and Christopher Johnson deny ownership.

Our Court of Appeals has previously determined "it [is] fairly inferable that a codefendant's possession of a dangerous weapon is foreseeable to a defendant with reason to believe that their collaborative criminal venture includes an exchange of controlled substances for a large amount of cash." *United States v. Kimberlin*, 18 F.3d 1156, 1160 (4th Cir. 1994) (internal citations omitted). As long as a firearm's "location makes it readily available to protect either the participants themselves during the commission of the illegal activity or the drugs and cash involved

in the drug business, there will be sufficient evidence to connect the weapon to the offense conduct." *Manigan*, 592 F.3d at 629 (quoting *United States v. Corcimiglia*, 967 F.2d 724, 727 (1st Cir.1992)).

According due weight to *Kimberlin*, it is nevertheless apparent officers located both firearms on or near Christopher Johnson's person. There is no evidence to suggest the location of the firearms on or near Christopher Johnson's person made them readily available to Mr. Hughes and possessed by him in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction. For example, the record provides little in the way of a connection between Mr. Johnson and Mr. Hughes being involved in some joint or concerted distribution activity. The absence of that necessary evidentiary development casts doubt upon the applicability of *Kimberlin* in this setting.

Accordingly, the Court **SUSTAINS** Mr. Hughes' objection to the PSR and **FINDS** the two-level enhancement for possessing a firearm under U.S.S.G. §2D1.1(b)(1) is inapplicable in Mr. Hughes' case.

### III.

Accordingly, the Court **OVERRULES** the Government's objection, **SUSTAINS** Mr. Hughes' objection, and **DIRECTS** Probation to submit an amended PSR in accord with this decision and the 2023 United States Sentencing Guidelines, specifically § 4A1.1(e) on or before **February 16, 2024.** Mr. Hughes' sentencing earlier scheduled for December 21, 2023, is **CONTINUED** to **March 1, 2024, at 11:00 a.m. in Beckley** to afford the Probation Officer the time necessary to accomplish the necessary modifications.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of

12

the United States Marshal.

ENTER:        January 16, 2024

Frank W. Volk
United States District Judge